IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GOKEN AMERICA, LLC, | : |
| Plaintiff, | : Case No. 2:14-CV-1445 |
| v. | : JUDGE ALGENON L. MARBLEY |
| NAVEEN BANDEPALYA, et. al., | : Magistrate Elizabeth P. Judge Deavers |
| Defendants. | : |

## PRELIMINARY INJUNCTION ORDER

This matter comes before the Court on Plaintiff Goken America, LLC ("Goken")'s Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2). For the following reasons, Plaintiff's Motion for a Preliminary Injunction is hereby **GRANTED**.

### I. BACKGROUND

#### A. Factual Background

Plaintiff Goken America, LLC ("Goken") is an Ohio engineering firm that employed defendant, Naveen Bandepalya ("Bandepalya"), from September 2010 until January 2014. Goken promoted Bandepalya to a supervisory position in October 2012. Goken issued Bandepalya a company laptop and iPhone upon his promotion.

In April 2013, Bandepalya requested access to a "Business Development" subfolder within a larger "Admin" folder. The larger "Admin" folder houses a variety of important Goken files, such as: a Japanese-English dictionary specified to Honda engineering terms, employee payroll information, Development Support Engineer information, HR information, employee immigration information, and a folder with legal files. Goken CEO, Doug Smith ("Smith"), gave Bandepalya access to the entire "Admin" folder on his Goken laptop because it would have been

logistically difficult to give Bandepalya restricted access to just the "Business Development" subfolder. The Goken network required a unique username and password to access the "Admin" folder so that only approved employees have access to it. The parties did not discuss Bandepalya's authorization for the other sub-folders within the restricted "Admin" folder. But Smith testified that it was his understanding that Bandepalya would only access files in the "Business Development" sub folder based on a conversation they had and based on common practice. (Transcript of Preliminary Injunction Hearing, *Goken America v. Bandepalya*, 2:14-cv-1445 (2014)).

Bandepalya quit his job at Goken in January 2014. He returned his Goken-issued laptop and iPhone during his exit interview, but both devices had been wiped clean of all Bandepalya's files and restored to default settings. Goken then submitted the devices to a forensic investigator who could recover deleted files and determine some activity from the laptop. That investigator determined that a month before quitting at Goken, in December 2013, Bandepalya copied 8,659 files, the entire contents of the restricted "Admin" folder, onto his laptop and then onto an external hard drive. Bandepalya confirmed that he copied those files in or around the beginning of January. But he stated that he only meant to take his personal files and presentations that he prepared during his employment at Goken. He testified that he did not open any of Goken's files after downloading them onto the external hard drive. But Liptak, the forensic investigator, testified that Goken files from the "Admin" folder had been viewed at least 69 times from the external hard drive while it was in Bandepalya's possession.

Both parties agree that there was no non-compete contract in effect when Bandepalya was employed at Goken. Goken published a handbook of employee expectations, and that handbook included a confidentiality clause, which Bandepalya signed. His signature affirmed

that he had read and understood the policies, but not specifically that he agreed to be bound by the policies. But Bandepalya agreed that he knew that the information on the "Admin" folder was not to be shared with people outside the company. (Transcript of Preliminary Injunction Hearing, *Goken America v. Bandepalya*, 2:14-cv-1445 (2014)).

While working at Goken, Bandepalya supervised ongoing projects with a valuable client, Honda R&D Americas, Inc. ("Honda"). Bandepalya currently works for Defendant American Hydrostatics ("AH") and was contracted out to its subsidiary, Defendant Cresttek, LLC ("Cresttek"). Bandepalya's duties at Cresttek are similar to his prior responsibilities at Goken. The similarities include working primarily with Honda, seeking to improve Cresttek's reputation at Honda, and identifying resumes for filling prospective work at Honda. (Transcript of Preliminary Injunction Hearing, *Goken America v. Bandepalya*, 2:14-cv-1445 (2014)).

### B. Procedural Background

On September 3, 2014, Goken filed its complaint (Doc. 1) and a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunctive Relief (Doc. 2). This Court awarded the TRO and entered an Order:

   (a) enjoining Defendants from using or disclosing Goken's confidential business trade secret information;

   (b) prohibiting Bandepalya from working on Honda projects until a hearing on the merits;[1]

   (c) ordering Defendants to preserve all documents and electronic files that could be relevant to this lawsuit;

   (d) ordering Defendants to identify and turn over all Goken trade secret information; and

   (e) ordering Bandepalya to deliver all external hard drive and USB devices he connected to his Goken laptop during his employment.

---

[1] Goken sought a TRO that would prevent Bandepalya from engaging in any work for AH or Cresttek, but this Court did not grant that request. Rather, the TRO provided that Bandepalya would not engage in any work or supervision for Honda projects.

This TRO has remained in place since it was ordered on September 9, 2014. (Doc. 12). It is now replaced with this order.

## II. STANDARD OF REVIEW

A preliminary injunction is a remedy used by the court to preserve the status quo between the parties pending trial on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). When determining whether to grant a preliminary injunction, this Court must balance the following four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir.2002). These factors are to be balanced against one another other and should not be considered prerequisites to the grant of a preliminary injunction. *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir.1998). As an extraordinary remedy, a preliminary injunction is to be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir.2000).

Significantly, "[a]t the preliminary injunction stage, 'a plaintiff must show more than a mere possibility of success,' but need not 'prove his case in full.' " *Northeast Ohio Coalition v. Husted*, 696 F.3d 580, 591 (6th Cir.2012) (quoting *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir.2007) (citations omitted)). Furthermore, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more

deliberate investigation." *Id.* (alterations original) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir.1997)).

## III. LAW & ANALYSIS

In this action for a preliminary injunction, Plaintiff claims: (1) violations of the Computer Fraud and Abuse Act, under 18 U.S.C. § 1303 *et. seq.*; (2) a violation of the Ohio Uniform Trade Secrets Act; (3) unjust enrichment; and (4) conversion against Defendants.

### A. Likelihood of Success

### 1. Computer Fraud and Abuse Act

Goken asserts that it has a strong likelihood of success because defendants violated three sections of the Computer Fraud and Abuse Act ("CFAA").

Goken first asserts that Defendants violated 18 U.S.C. § 1030(a)(2)(C). This subsection makes it illegal "intentionally [to] access[] a computer without authorization or exceed[] authorized access" and thereby obtain information from a protected computer. 18 U.S.C. § 1030(a)(2)(C) (2006). A protected computer is a computer "used in or affecting interstate or foreign commerce or communication." 18 U.S.C. § 1030(e)(2)(B). Goken contends that Bandepalya violated this section of the Computer Fraud and Abuse Act because he exceeded authorized access when he only had permission to access the "Business Development" subfolder within the larger "Admin" folder, yet he accessed and downloaded many other files in the "Admin" folder.

Second, Goken contends that Defendants violated § 1030(a)(4) of the CFAA. This subsection makes it illegal for a person "knowingly and with intent to defraud, [to] access[] a protected computer without authorization, or exceed[] authorized access" to further the intended fraud and obtain something of value. 18 U.S.C. § 1030(a)(4). Goken argues that Bandepalya's

deletion of all the downloaded files from his laptop and concealment of his business relationship with AH and Cresttek during the time that he downloaded the files demonstrate the high likelihood of succeeding on this point. Goken also discusses the competitive value of their trade secrets and argue that they fulfill the "something of value" prong of this section.

Third, Goken relies on § 1030(a)(5)(C) of the CFAA, which prohibits an individual from "intentionally access[ing] a protected computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5)(C). Goken argues that this section applies because Bandepalya's access was outside the scope of his authority. Goken also contends that it suffered damage and loss when its confidential business information was made available to a direct competitor.

Defendants deny any likelihood of success under this act because there is no violation of the CFAA when permission is knowingly and voluntarily given. They contend that the CFAA does not apply when an individual misappropriates information after access is freely given. Defendants state that Goken gave Bandepalya access to the "Admin" folder, so there can be no violation of the CFAA. They argue that the CFAA is not the appropriate statute for this case because Bandepalya did not improperly access the files. Defendants assert that a Bandepalya purportedly misused the information *already at his disposal*, rather than *improperly accessing it* in the first place.

"Courts around the country struggle with whether the CFAA applies in a situation where an employee who had been granted access to his employer's computers uses that access for an improper purpose." *Ajuba Intern., L.L.C. v. Saharia*, 871 F.Supp.2d 671, 685 (E.D.Mich.2012). There are some courts that "have construed the terms narrowly, holding that an employee's misuse or misappropriation of an employer's business information is not 'without authorization'

so long as the employer has given the employee permission to access such information." *Cranel Inc. v. Pro Image Consultants Grp., LLC*, 2014 WL 4829485, at *5 (S.D. Ohio 2014) (citing *Ajuba*, at 686). Other courts have determined that "an employee accesses a computer without authorization whenever the employee, without the employer's knowledge, acquires an interest that is adverse to that of his employer or is guilty of a serious breach of loyalty." *Cranel*, at *5 (citing *Ajuba*, at 686).

One Court in this district has construed the term "exceeds authorized access" narrowly. That Court recently held that an employee who has total access to an employer's computer but misuses the information from that computer does not operate "without authorization" under the CFAA. *See Cranel*, at *8. The employee in that case did not "exceed authorized access" because the employee had authorization to access all files on the computer. *See id.* An employee "exceeds authorized access" when that employee "access[es] a computer with authorization and [uses] such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *Id.* (citing 18 U.S.C. § 1030(e)(6)).

While this Court does not agree with this narrow construction, it need not resolve this issue. Even under the *Cranel* Court's narrow construction of the term "exceeds authorized access," Bandepalya did exceed that access. Unlike the situation in *Cranel*, Bandepalya was only given permission to access the "Business Development" subfolder within the larger "Admin" folder. He was not explicitly instructed to avoid the other folders, but in his email to Smith, he only requested access to the "Business Development" subfolder. Furthermore, Bandepalya admitted that he understood that the information was confidential and was not to be shared outside of the company, especially with Goken competitors. (Transcript of Preliminary Injunction Hearing, *Goken America v. Bandepalya*, 2:14-cv-1445 (2014)).

Smith testified that it was his understanding that Bandepalya would only operate within the business development folder "[b]ased on the conversation we had and my way of thinking that that's common respect and you don't go looking at other people's personnel information." (Transcript of Preliminary Injunction Hearing, *Goken America v. Bandepalya*, 2:14-cv-1445 (2014)). He also testified that Bandepalya's "request and the authorization were all specific to the business development [sub]folder." *Id.* Smith's testimony regarding his understanding with Bandepalya, in conjunction with Bandapalya's narrow request to access *only* the business development subfolder, compel the conclusion that Bandepalya was not authorized to access files that were beyond the purview of his duties and responsibilities.

Goken is likely to succeed on the merits of §§ 1030(a)(2)(C) and (a)(4) because it can show that Goken never gave Bandepalya permission to access to the entire "Admin" folder. Goken has a high likelihood of success on this point because in his email to Smith, Bandepalya only requested permission to access the "Business Development" subfolder and not the entire "Admin" folder. So even under this Court's narrow reading of the CFAA, Goken is likely to succeed on §§ 1030(a)(2)(C) and (a)(4) because Bandepalya "exceeded authorized access." But Goken is unlikely to succeed under § 1030(a)(5)(C) because that section only applies to those "without authorization" and Bandepalya merely "exceeded authorized access."

### 2. Ohio Uniform Trade Secrets Act

Goken asserts that it is likely to succeed under the Ohio Uniform Trade Secrets Act ("OUTSA") because the information he downloaded qualified as trade secrets. The files include Professional Service Agreements, Pay Rates, Pricing, Work Record Sheets, Business Proposals, and Case Studies. (Transcript of Preliminary Injunction Hearing, *Goken America v. Bandepalya*, 2:14-cv-1445 (2014)). Goken contends that the information contained in these documents is not

generally known to Goken's competitors. Goken also argues that it has taken efforts to protect the information by restricting the "Admin" folder to high-level managers and requiring a password to access the information.

Goken relies on the "inevitable disclosure rule" to show that Defendants engaged in unauthorized use of the trade secrets. This doctrine is applicable in Ohio and stands for the presumption that "a threat of harm warranting injunctive relief exists when an employee with specialized knowledge commences employment with a competitor." *MEMC Elec. Materials v. Balakrishnan*, 2012 WL 3962905, at *9 (S.D. Ohio 2012), citing *Contech Const. Prod., Inc. v. Blumenstein*, 2012 WL 2871425, at *11 (S.D.Ohio 2012).

Defendants argue that Goken is unlikely to succeed on any of the three elements. Defendants contend that the purported trade secrets have been disclosed to employees and clients who do not have a confidentiality obligation. Furthermore, Goken did not execute confidentiality or non-disclosure agreements with its employees, mark the files as confidential, or develop policies that prohibit dissemination of the file. Defendants focus on the argument that the materials are not trade secrets and do not address the issue of whether they used the information in an unauthorized manner.

Under OUTSA, a plaintiff must prove: (1) the existence of a trade secret; (2) the acquisition of a trade secret as a result of a confidential relationship; and (3) the unauthorized use of a trade secret. *MEMC Electronic Materials v. Balakrishnan*, 2012 WL 3962905 (S.D. Ohio 2012). To qualify as a trade secret under the first prong, information must: (1) derive its value from being generally not known nor readily ascertainable by others who could derive value from it; and (2) be the subject of reasonable efforts to maintain its secrecy. O.R.C. § 1333.61(D). The

Ohio Supreme Court also adopted a number of factors to analyze whether information rises to the level of trade secret:

> (1) the extent to which the information is known outside the business;
>
> (2) the extent to which it is known to those inside the business, *i.e.,* by the employees;
>
> (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information;
>
> (4) the savings effected and the value to the holder in having the information as against competitors;
>
> (5) the amount of effort or money expended in obtaining and developing the information; and
>
> (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. Besser v. Ohio State Univ.*, 732 N.E.2d 373, 378 (2000).

Many of the files that Bandepalya copied onto his external hard drive contain information that a reasonable business owner would not want a competitor to know. And Goken kept the information in a password protected folder, so Goken took reasonable efforts to maintain the confidentiality of the information within the company. Furthermore, the fact that Goken shared presentations and purchase agreements with clients and potential clients does not mean that the files lose their status as trade secrets. As Smith testified, it is common practice in the industry to have these communications with clients without a confidentiality agreement. Indeed, no client has ever shared with Goken proposals from one of Goken's competitors, so Smith had reasonable belief that clients would not share Goken proposals with others. Even without confidentiality agreements with clients, Goken took reasonable steps to maintain the confidentiality of the information. Furthermore, the Northern District of Ohio found pricing policies to be trade secrets when they were not generally known outside the company. *Penetone*

*Corp. v. Palchem, Inc.*, 627 F. Supp. 997, 1006 (N.D. Ohio 1985). This inquiry is highly fact-specific, but Goken has a strong likelihood of success on whether the materials were trade secrets.

Goken can also prove that the trade secrets were used in an unauthorized manner. The inevitable disclosure rule applies in this case because Bandepalya is working at a substantially similar position with specialized engineering knowledge. And in a similar case, this Court stated that a plaintiff can "show unauthorized use by pointing to the facts that [the former employee] transferred data on mass storage devices prior to his departure." *MEMC*, at *8. In that case, it was common practice at the company to copy files onto external devices, so the Court found that evidence unpersuasive. *See id.* But there is no evidence in this case that the behavior is commonplace at Goken. Goken is likely to succeed on the merits of its OUTSA claim.

### 3. Unjust Enrichment & Conversion

The unjust enrichment and conversion claims need not be addressed at this time. Both parties stipulate that the claims are barred by OUTSA to the extent that this Court finds that the information qualifies as trade secrets. *See* O.R.C. § 1331.67(A). As discussed above, the evidence shows that the files are likely trade secrets. So Goken is unlikely to succeed on these claims but is likely to succeed on the claims discussed above.

### B. Irreparable Harm

Goken claims that it will suffer irreparable harm because of "the potential for lasting and unjust competitive harm." Goken cites the proposition that "an actual threat of irreparable injury may be established by showing that the employee possessed knowledge of the employer's trade secrets." *Levine v. Beckman*, 548 N.E.2d 267, 271 (Ohio App.1988); *see also Columbus Steel Castings C. v. Alliance Castings Co., L.L.C.*, 2011 WL 6931518 (Ohio App. 2011) ("when trade

secrets are misappropriated, specific irreparable harm is not required for an injunction"); *Avery Dennison Corp. v. Kitsonas*, 118 F.Supp.2d 848 (S.D. Ohio 2000) (stating that the potential disclosure of trade secrets constitutes irreparable harm).

Defendants claim that Goken cannot show immediate irreparable injury because Goken did not take any action for seven months even though Goken knew the underlying facts for that amount of time. Defendants argue that the lapse of time is a *de facto* admission that any irreparable harm is not immediate. Furthermore, Goken's revenue increased and its 2014 profit is expected to be the same as its 2013 profit. Defendants claim this fact proves that while there might be a *risk* for damages, the company's growth shows that there is no irreparable injury and that any such injury is not *immediate*.

Goken will likely suffer irreparable harm without this injunction because the case involves corporate trade secrets. Courts are typically sensitive to the irreparable harm that trade secret disclosure can cause. *See Avery Dennison Corp. v. Kitsonas*, 118 F.Supp.2d 848 (S.D. Ohio 2000), *Columbus Steel Castings C. v. Alliance Castings Co., L.L.C.*, 2011 WL 6931518 (Ohio App. 2011), *Levine v. Beckman*, 548 N.E.2d 267, 271 (Ohio App.1988). As Defendants point out in their response brief, grounds for irreparable injury include "loss of control of reputation, loss of trade, and loss of good will." *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3rd Cir 1989). Because exposed trade secrets could harm a plaintiff's share of the market and cause loss of business opportunities and reputation, this Court finds a strong likelihood of irreparable injury for Goken without a preliminary injunction.

Defendants' counter-argument is not persuasive. Even though Goken did not bring the lawsuit for seven months, that period of delay is not uncommon for parties preparing for litigation. It is not a *de facto* admission that there will be no irreparable harm, and Defendants

cite no case law for such a proposition. Futhermore, even though Goken does not assert a specific monetary harm, that does not prove that there is no injury. Plaintiffs can seek legal or equitable relief. A plaintiff need not plead specific money damages at the time of the preliminary injunction hearing in order to prove irreparable damages.

### C. Substantial Harm to Others

Goken argues that the balance of equities favors Plaintiff because "no legally cognizable harm occurs ... by enjoining the unlawful use of Goken Business and Trade Secret Information" and any harm to Bandepalya "is the direct result of his actions."

Defendants assert that an award of a preliminary injunction would cause their company substantial harm because an inability to service Honda could cause it to go out of business.

The Court can significantly decrease the potential harm to Defendants by allowing the companies AH and Cresttek to continue working with Honda and allowing Bandepalya to continue working for AH and Cresttek. As with the Temporary Restraining Order, the Court prohibits Bandepalya from performing work for Honda but allows him to continue employment by servicing other clients. Although Defendants claim that they might not be able to continue employing Bandepalya if he is prohibited from working with Honda clients, Mr. Bramadesam, an investor in both AH and Cresttek, testified that he has no doubt that Bandepalya would be able to learn the software tools that Cresttek uses for work with other clients like GM. (Transcript of Preliminary Injunction Hearing, *Goken America v. Bandepalya*, 2:14-cv-1445 (2014)). In order to avoid irreparable injury for the Defendants, this Preliminary injunction will not prevent Bandepalya from working for AH and Cresttek but will prohibit him for working with Honda and on current and prospective Honda business and projects.

### D. Public Interest

Goken argues that the public interest is served because the public has a legitimate interest in an Ohio company "being able to protect its trade secrets."

Defendants contend that the public interest would be harmed if the Court awards a preliminary injunction to Goken because they delayed a claim for seven months. They argue that the preliminary injunction would not "maintain a status quo, which no longer exists" because of Goken's delay.

The protection of trade secrets weighs in favor of the public interest. *See Kendall Holdings Ltd. V. Eden Cryogenics LLC*, 630 F.Supp.2d 853, 869 (S.D. Ohio 2008). So this factor weighs in favor of Goken because it is in the public's interest for a company to be able to protect its trade secrets. Although Defendants cite the proposition that laches is appropriate to bar injunctive relief when the party seeking relief lacked diligence in pursuing its claim, the Court does not find that Goken lacked diligence in pursuing its claims. A seven month delay, during which time Goken sought to uncover evidence for its litigation, is common in litigation. Defendants have not asserted adequate evidence that Goken lacked diligence in its pursuit of information and in its preparation for litigation.

## IV. CONCLUSION

Based on the foregoing, the Court finds that the balance of factors weighs in favor of issuing a preliminary injunction in this action. Plaintiff's Motion for Preliminary Injunction is, therefore, **GRANTED**. The Court hereby **ORDERS** as follows:

A. Defendants are enjoined from using or disclosing Goken's confidential trade secret information;

B. Defendants are ordered to preserve all documents and electronic files that could be relevant in this lawsuit;

C. Defendants are ordered to identify and turn over all Goken trade secret information;

D. Bandepalya is ordered to deliver all external hard drive and USB devices he connected to his Goken laptop during his employment;

E. Bandepalya is prohibited from engaging in any work relating to Honda and on Honda projects; and

F. Defendants are enjoined from recruiting Goken employees.

**IT IS SO ORDERED.**

                                                 <u>s/ Algenon L. Marbley</u>
                                                 **ALGENON L. MARBLEY**
                                                 **UNITED STATES DISTRICT JUDGE**

**DATED: September 24, 2014**